DMYTRO E. VEROVKIN, Pro Se
39821 Cedar Blvd., Unit 313
Newark, CA 94560
Telephone: 510-493-2441

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Dmytro VEROVKIN,<br><br>    Plaintiff,<br><br>  vs.<br><br>David N. STILL, District Director, United States Citizenship & Immigration Services,<br><br>    Defendant | Case No.: **C 07-3987-CW**<br><br>PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT<br><br>Date:   November 8, 2007<br>Time:   2:00 p.m.<br>Courtroom:  2 |

PLEASE TAKE NOTICE that on November 8, 2007, at 2:00 p.m., before the Honorable Claudia Wilken, courtroom no. 2, 1301 Clay Street, Oakland, California, Plaintiff Dmytro Verovkin will move the Court for entry of Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

The motion will be based upon the fact that there are no contested issues of material fact and that the agreed facts compel a legal conclusion that Defendant improperly denied Plaintiff's I-485 application for adjustment to legal permanent resident status. The motion will also be based upon the USCIS Administrative record # A 96 636 323, the accompanying memorandum

\\

\\

\\

of points and authorities and any and all other matters that the Court may wish to consider.

Dated this 4th day of October, 2007

/s/
_____
DMYTRO E. VEROVKIN,
Pro Se

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

In the narrow context, the case at hand calls up a question of whether the statutes of the United States are to be interpreted in such an way as to form a basis for denying adjustment of status to a lawfully admitted K-2 visa beneficiary on the grounds that he reached his 21st birthday at some point after his arrival in the United States but before his status was adjusted to that of a permanent resident.

On the broader scale, this case is about common sense, fairness and good public policy as defined by congress.  This Court is asked to decide if it is in the interests of the United States for an agent of the government to engage in the devastation of families of United States citizens where no member of that family has done anything wrong.

The Plaintiff is not an attorney and therefore trusts in the good and decent people of the United States as represented by the judicial branch to sort through the complexities of immigration law and arrive at a fair and proper decision in this matter.

## II.  FACTS

The material facts of this case as contained in paragraphs 6 through 16 of the Complaint are undisputed and are incorporated herein by this reference.  In summary they are the following:

1) Plaintiff, Dmytro Verovkin was born October 16, 1984 in the Republic of Ukraine;
2) On March 31, 2004, Dmytro was issued a K-2 visa good until September 29, 2004 (180 days), concurrent with a K-1 Fiancé(e) visa issued to his mother and pursuant to an approved Petition for Alien Fiancé(e) (from I-129F) submitted by Ronald Monks who is a United States Citizen, and an approved Nonimmigrant Visa Application (form DS-156). It should be noted that question 26 on the DS-156 asks, *How long do you intend to stay in the U.S.?* to which Dmytro answered, "Permanently."
3) On April 25, 2004, Dmytro and his mother were admitted as K-2 and K-1 entrants respectively;

4) On June 4, 2004, Dmytro's mother married Ronald Monks.

5) On September 14, 2005 Dmytro and his mother each filed an Application to Register Permanent Residence or Adjust Status (Form I-485).

6) On April 19, 2006, Dmytro's family attended an interview at the Defendant's offices in San Francisco for the purpose of adjudication of their I-485 applications.

7) On April 27, 2006 Dmytro received a letter from the Defendant denying his application for permanent residence and advising Dmytro that he should leave the United States.

8) On May 22, 2006, Dmytro filed a timely motion to re-open/reconsider.

9) On September 13, 2006 Dmytro's motion was denied.

10) On December 24, Dmytro's mother received her Permanent Resident "Green" Card.

11) On June 30, 2007, Dmytro mailed a 30-day notice of intent to the Defendant which was not answered.

12) On August 2, 2007, Dmytro filed this action.

### III.  ARGUMENT

A. <u>DEFENDANT USED A STRAW MAN ARGUMENT TO JUSTIFY DENIAL.</u>

In his letter of denial dated April 25, 2006, the Defendant gave, as the sole reason for his decision, the following:

> "A review of the record reveals that you were born October 16, 1984. Because you are now over 21 years of age, you now longer qualify as an accompanying child pursuant to **section 203(d)** of the Act. Consequently, the application must be denied for lack of a visa number." (Emphasis added)

The Plaintiff, in his motion to reconsider, pointed out that his case is controlled by section 214 and that section 203 has no bearing on his case, as he did not apply for, nor intend to apply for a family-based immigrant visa and that because of this obvious error the decision should be reconsidered.  However, the Defendant remained intransigent in his unwillingness to provide a valid and rational basis for his denial leaving the Plaintiff no alternative but to bring this action..

\\

B.  HISTORY THE FIANCE(E) NONIMMIGRANT VISA.

The Fiancé(e) visa process was created on April 7, 1970 with the enactment of Pub. L. 91-225. The Act, for the first time, created a nonimmigrant classification which was directed to the ultimate grant of lawful permanent residence. The "K" nonimmigrant visa has be described as a "hybrid between an immigrant and nonimmigrant visa, one which contemplates that the alien will eventually obtain permanent residence in this country." Friedberger v. Schultz, 616 F. Supp. 1315, 1318, 3 Immigr. Re. A3-5 (E.D. Pa. 1985).

The new procedure permitted United States citizens to, in effect, pre-process their intended bride or groom and his/her children (if unmarried and under 21) so that the marriage would be the final step in the immigration process rather than the first. The process is a benefit not only to the parties but to the government as well. Backgrounds are checked ahead of time as applicants for the fiancé(e) visa must submit police records from every police department under whose jurisdiction they have lived since the age of sixteen. Personal history forms are submitted and FBI background and name checks are also performed before the visa is issued.

Further, applicants for the "K" visa must submit to medical examinations performed specifically by physicians approved by the U.S. Department of State and immunization records are submitted. Any pregnancy is disclosed and the other party is given the option of terminating the process or continuing. An intensive interview is conducted by a state department officer and most, if not all, skeletons are dragged out of the closet well ahead of the fateful decision as the officer looks for signs of marriage fraud.

Through the K visa program, U.S. citizens learn more about their alien fiancé(e) than they would about a domestic fiancé(e). Recently, the program has been amended so that the alien fiancé(e) will know even more about his/her U.S. citizen's history and situation.

Such advance knowledge of potential obstacles to a successful marriage and the disposition of immigration issues before the wedding is performed are of immense social value. Studies have shown that marriages of K-1 visa beneficiaries fare far better in terms of divorce rate than the national average.

One key to the success of the program is the fact that the fiancé(e) nonimmigrant visa process is essentially an immigration procedure with the last step being the K-1 beneficiary's marriage to the U.S. citizen petitioner within 90 days of entering the United States. Once the marriage is timely performed, the K-1 fiancé(e) and his/her K-2 children are deemed fully eligible for adjustment to permanent residence status and upon submitting the requisite application and fees and barring any findings of inadmissibility under Section 212 their status will be adjusted to permanent residence.

It is noteworthy how few issues have arisen from this straightforward and effective program. Only two Board of Immigration Appeals cases have been published that have relevance: Matter of Dixon, 16 I&N Dec. 335 (BIA 1977); 1997 WL 39292 and Matter of Dawson, 16 I&N Dec. 693 (BIA 1979); 1979 WL 44431. There have been no precedent interpretations of section 214(d) since 1979.

The 1986 International Marriage Fraud Amendments (IMFA) made two modifications to the K-1 procedure. The first added a requirement that the parties have met in the two years prior to petitioning for the visa; and the second made the adjustment to permanent resident status of the alien spouse and his/her sons and daughters conditional where the marriage occurred less than two years prior to adjustment. To accommodate this latter restriction, language was modified and section 216 was created dealing with adjustment of status. Plaintiff's adjustment should have been unaffected by these amendments because his mother's marriage had exceeded two years in duration at the time of adjustment.

C. DEFENDANT'S DENIAL IS ARBITRARY AND INCONSISTENT.

For reasons not fully explained, the Defendant has adopted a view that a K-2 child must be under the age of twenty-one at the time he/she receives his/her Notice of Approval of his I-485 adjustment application. This view is arbitrary and places greater restrictions upon the child than the law requires. The law requires only that the child be unmarried and under the age of 21 to be eligible to enter the United States. At times when a child of a fiancé(e) is approaching his/her 21st birthday, the consular officer is instructed to issue the K-2 visa for six months or until

the child's 21st birthday, whichever period is shortest.  There are times then, when a K-2 visa is issued with only one or two days of validity.

If the Defendant's position on aging-out of K-2 children were correct, then the United States must be seen as engaging in a fraud upon the it's own citizens and their new families-to-be by not disclosing that the USCIS will absolutely not adjust the child's status owing to the physical impossibility of his/her remaining under the age of twenty-one until the adjustment process is completed - a process that in practice takes as long as 3 or 4 years in some cases but never less that 3 or 4 months.  Such "catch 22-type" inconsistent interpretation of laws are capricious and arbitrary and therefore **impermissible**.

D. <u>DEFENDANT'S DENIAL VIOLATES PRECEPTS OF CONTRACTUAL INTEGRITY</u>.

As shown above, severe problems can arise when one agency of the government acts in disharmony with another.  Likewise, when a government agency prepares official application forms and instructions to accompany those forms and requires applicants to complete and sign such forms, there is an reasonable expectation on the part of the applicant that the form and it's instructions accurately represent a restatement of the laws and regulations that control the subject matter and that no material information is being concealed or withheld.  It is also a precept of contract law that all material terms are contained within the four corners of the subject instrument.

The form I-485, Application to Register Permanent Residence or Adjust Status is 4 pages in length and is estimated to take 5 hours and 15 minutes to complete.  In addition there are 9 pages of instructions accompanying the application.

On the first page of the application, Part 2 labeled "Application type" the applicant is asked to check one of 8 boxes that follow the statement, "I am applying for an adjustment to permanent resident status because:" The Plaintiff checked the third box labeled,  "*c.  I entered as a K-1 fiancé(e) of a United States citizen whom I married within 90 days of entry, or I am the K-2 child of such a fiancé(e)* ."  Note that this box "c" is for the exclusive use of K-1 and K-2 entrants while boxes "a" and "b" are for immigrants whose visa number has been approved or

those who claim derivative status from a spouse or parent who have been granted lawful permanent residence.

As to the Form I-485 Instructions on page one under the heading *"Who May file This Form I-485?"* each of the eight check boxes is further clarified. Paragraph 3 addresses the K-1, K-2 eligibility:

*"A. You may apply to adjust status if you were admitted to the United States as the K-1 fiancé(e) of a United States citizen and you married that citizen within 90 days"*

*"B. If you **were admitted as** the K-2 child of such a fiancé(e), you may apply to adjust status based on your parent's adjustment application."* {Emphasis added).

There is no verbiage stating or implying that the K-2 must still be a child under the age of 21 at the time of adjustment or must remain under 21 throughout the months and years it may take to process the application. To assert that such a material fact is true though not spelled out explicitly or implicitly on either the application or its instructions would conflict with the clear meaning of the three words, "*were admitted as*.."

Rightly, the instructions are designed to leave no doubt as to who is eligible to adjust and who is not. So further, on page 2, section 10, we find a list of 12 situations where an alien is <u>not</u> eligible for adjustment. This section is labeled, "*Who Is Not Eligible to Adjust Status*." Surely, if the Defendant's contention were accurate and a K-2 who has reached the age of twenty-one were in fact ineligible to adjust, here would be the place to disclose such. Here there are two references to the K-2 visa. In the first reference under subparagraph F it is stated that you are not eligible to adjust if "*you failed to maintain your nonimmigrant status, other than through no fault of your own or for technical reason: unless you are applying because you are:…….2. A K-1 fiance(e) or a K-2 fiance(e) **dependent** who married the United States petitioner within 90 days of admission;"* (Emphasis added)

It is important to note that the word "dependent" has been carefully substituted for the word "child" where the words "were admitted as" have be replaced with the word "are". The drafters of the forms were obviously mindful of the potential for misunderstandings of the type that caused the need for this suit. As further proof, the same care has bee taken in the next

paragraph of the I-485 instructions which reads, you may not adjust status if, *"You were admitted as a K-1 fiancé(e), but did not marry the U.S. citizen who filed the petition for you, or you **were admitted as the K-2 child** of a fiancé(e) and your parent did not marry the United States citizen who filed the petition:"*

If Defendant wishes to continue to assert then, that his interpretation of who is eligible to adjust and who is not, supercedes the precisely-crafted wording by USCIS attorneys as contained in the official USCIS forms and instructions, then he should be required to address the negative issues created by his assertion and reconcile the wording conflicts herein described..

### IV. CONCLUSION

The United States congress has never promulgated any law that would separate families without strong evidence of wrong-doing on the part of one of the family members.  To the contrary congress has passed the LIFE Act to unite families whose members may be waiting abroad for immigrant visas to allow them to wait while with their families in the United States. More recently congress passed the Child Status Protection Act (CSPA), designed to keep families together in the United States while waiting for immigrant visas for their children.

At every opportunity, congress has expressed its intent to ameliorate harsh results upon immigrating families.  The 9th Circuit has re-affirmed that intent and admonished the USCIS against its all too frequent attempts to frustrate the will of congress.   Hernandez v. Ashcorft, 345 F.3d 824, 840 (9th Cir. 2003) and in Akhtar v. Burzynski, 383 F.3d 1193 (9th Cir. 2004).

For all the forgoing reasons, Plaintiff respectfully asks the Court to put an end to the suffering that the Defendant has unjustifiably inflicted upon the Plaintiff's family and grant his motion for summary judgment.

\\\

Dated: October 4, 2007

Respectfully submitted,

_____/s/_____

Dmytro E. Verovkin

Pro Se