DMYTRO E. VEROVKIN, Pro Se
39821 Cedar Blvd., Unit 313
Newark, CA 94560
Telephone: 510-493-2441

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Dmytro VEROVKIN, | Case No.: **C 07-3987-CW** |
| Plaintiff, | OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT. |
| vs. | CROSS-MOTION FOR SUMMARY JUDGMENT. |
| David N. STILL, District Director, United States Citizenship & Immigration Services, | Date:  November 8, 2007 |
| Defendant | Time:  2:00 p.m. |
| | Courtroom:  2 |

On October 4, 2007, Plaintiff filed a Motion for Summary Judgment. Shortly thereafter, Plaintiff learned of the Court's desire that cross-motions for summary judgment be contained within the opposition to any motion for summary judgment. Accordingly, Plaintiff includes herein his cross-motion for summary judgment and stipulates to striking the October 4th filing.

**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Defendant apparently believes that the United States is in the business of submitting alien children to extensive background and medical screening and after approval, admitting them into American society - with full knowledge that the only purpose for their move the United States is to remain permanently with their parent - only to tell them later that they can't stay because "there is no

provision of law that allows [them] to adjust….status" to permanent residence along with their parent. See p.1, line 23.

If the Immigration and Nationality Act, with its myriad amendments, is confusing, tangled and ambiguous, such should not prevent the Defendant from exercising common-sense discretion in the administration of his duties. Immigration law does indeed provide for adjustment of the Plaintiff. Defendant mistakenly interprets the law in a way that is inconsistent, unreasonable and produces the harshest consequence to the Plaintiff and his family. Defendant is not entitled to summary judgment in his favor.

**Facts.**  The parties do not dispute the facts though Defendant's motion does contain a factual misstatement. Plaintiff's **visa did not expire** on July 23, 2004 as Defendant states. This date represents the end of the 90-day period of authorized admission. A date that is significant in K-1/K-2 cases where the marriage between the K-1 beneficiary and the citizen petitioner **does not occur** within 90 days of entry. Indeed, the date marks the end of the 90-day period. The date which was affixed to the passports and admission records of both the Plaintiff and his mother is mooted in the instant case by the marriage of Plaintiff's mother to the citizen petitioner on June 4, 2004.

For the record, the K visa expiration date was September 29, 2004 for both the Defendant and his mother. Their visas were used up on April 25, 2004 when they were granted a one-time admission.

**Defendant's Analysis.**  Defendant uses the term "majority age." See p.3, line 15. One of the ambiguities of The Immigration and Nationality Act is that though it contains at times the description "minor child" the Act does not define the term.

However, INA § 101(b)(1) [8 USC 1101(b)(1)] does define the term "child" as an "unmarried person under twenty-one years of age who is (A) a child born in wedlock;…" It is therefore possible for a married person of sixteen years of age, for example, to be considered a minor child in common usage but not be considered a "child" for purposes of U.S. immigration law. Accordingly, common definitions do not always apply in immigration law. This fact is lies at the heart of the dispute between the parties.

Defendant argues that Plaintiff's eligibility for adjustment relied upon his status as a "minor" because his application for adjustment was dependent upon his mother's application and because his mother's adjustment was finalized after Plaintiff turned twenty-one. See p. 3, lines 20-22.  Defendant offers neither an explanation for these apparent non-sequiturs, nor a statutory basis for his conclusion.

Defendant perhaps is correct when he asserts that nothing in immigration law "freezes" a K-2 visa applicant's age at the point he enters the United States or even at the point he applies for permanent residency. See p.3, lines 23-25.   .In the first instance, a K-2 visa "applicant" may not enter the United States at any age until his application is approved and a K-2 visa is affixed to his/her passport.  No K-2 visa can be issued for a period beyond the child's 21st birthday.  To do so would not be in accordance with 8 CFR 214.2(k)(3).  So while it is true that no immigration law "freezes" a child's age for purposes of K-2 visa application and issuance or for adjustment, there is similarly no law that requires a K-2 child to remain under the age of 21 for any purpose thereafter.  A law "freezing" a K-2 child's age for post-admission purposes would be therefore unwarranted.

Accordingly, the Defendant's discussion of the Child Status Protection Act (CSPA) and its non-application to K-2 children is a straw man argument.  Plaintiff does not claim protection under CSPA and Congress did not intend to cover K-2 children because Congress understood that no law ages out K-2 children once admitted.

Whereas Congress, in enacting CSPA, has demonstrated its intent to stop the removal of children from their parents due to aging-out after being lawfully admitted;  any interpretation of ambiguous statute or regulation that would result in removal of other similarly-admitted children – children who have established their lives with their families in this country - would clearly be at odds that intent. Akhtar v. Burzynski, 383 F.3d 1193 (9th Cir. 2004).

Defendant asserts that "Plaintiff does not qualify for adjustment under § 1255(a)" of 8 USC [INA 245(a)].  Perhaps he is right. A literal reading of this section leads one to understand that in order to adjust his status an alien must be "eligible to receive an immigrant visa…and an immigrant visa must "be available to him at the time his application is filed."

K-2 visas are issued to children under age twenty-one pursuant to INA 214(d) and in accordance with 8 CFR 214.2(k)(3).  Yet a K-2 visa entrant who is already over the age of eighteen cannot possibly meet the prerequisites of § 1255(a).  He has no step-parent relationship to the citizen as defined in §101(b)(1)(B) [8 USC 1101(b)(1)(B)] because the marriage does not occur prior to his eighteenth birthday.  Further, he can have no eligibility based upon his parent's status as a legal permanent resident because she has yet to be adjusted to that status and even if he waits to apply until her adjustment were adjudicated, there would be no immigrant visa available to him at the time of application (as Defendant points out) due to availability priorities.

Oddly, Defendant does not argue that Plaintiff is ineligible for adjustment due to his age being greater than eighteen as § 1255(a) portends.  Rather, Defendant inexplicably cites Plaintiff's twenty-first birthday as the disqualifier.  Defendant will undoubtedly stipulate to the fact that he routinely approves adjustment applications of K-2 entrants of ages eighteen through twenty - each of whom are also ineligible under § 1255(a) [INA 245(a)].  To paraphrase Apollo 13 astronaut James Lovell - Houston, we have a problem.

**The Jiang Case.**  Defendant refers to Jiang v. Still - a case that is currently under appeal to the 9th Circuit. Defendant Still was sued in 2006 by Fan Jiang who was issued a K-2 visa concurrent with her mother's K-1 visa on July 11, 2005. Two days later, on July 13th, Fan Jiang and her mother were admitted at the San Francisco port of entry. The next day, July 14th, Jiang reached her 21st birthday.  The qualifying marriage took place and I-485 applications were filed by Jiang and her mother on October 6, 2005.  Despite the very rapid pace of events, Jiang's application for adjustment was denied.

Interestingly, the Court ruled that Jiang also did not meet the requirements of INA 245(a) but may have been adjusted under § 245(d) had she been under the age of 21 **at the time she applied.**  The Jiang Court reasonably defined "minor child" as one being under the age of 21 but did not explain how § 245(d) may be viewed separate from the requirements of § 245(a).  Given the absurdity of an interpretation of immigration law that allows children 18-21 to enter the United States on K-2 visas which contemplate permanent residency, only to deny these children adjustment because they are over 18, it would seem reasonable that the Court would find a

separation between subparagraphs (a) and (d) of INA 245.  Under this separation premise, Plaintiff Verovkin should have not been denied because he did file his application for adjustment **before** his 21st birthday.   On page 6 of the Jiang order, the Court quotes 8 CFR §214.2(k)(6)(ii)…:

> Upon contracting a valid marriage to the petitioner within 90 days of his or her admission as a nonimmigrant pursuant to a valid K-1 visa issued on or after November 10, 1986, **the K-1 beneficiary and his or her minor children may apply for adjustment of status to lawful permanent resident under section 245 of the Act.**.  Upon approval of the application the director shall record their lawful admission for permanent residence in accordance with that section and subject to the conditions prescribed in section 216 of the Act. (emphasis added by the Court)

The Court reasoned on page 7,

> First, the regulation only refers to a K-1 beneficiary and his or her "minor" children." [*sic*] In this case, Jiang was not a minor child at the time of application.  It is both reasonable and permissible for USCIS to interpret this statute as requiring Jiang to be a "child" at the time she applied to be eligible for adjustment of status to LPR.

While Plaintiff hesitates to quarrel with the above reasoning as it supports his own eligibility for adjustment as one who was under 21 at the time of application, the reasoning is nonetheless flawed.  Requiring Jiang to be a "child" while not requiring Jiang's mother to be "K-1 beneficiary" at the time of adjustment, invalidates the argument.

The portion of the regulation emphasized by the Court describes the applicants as "K-1 beneficiary" and "minor child."  The parent and child are described in the same sentence in the above regulation.  It is impossible for the parent and the child to concurrently meet these definitions at any time after one or both ceases to meet the required definitions. The alien parent described as "K-1 beneficiary" does not meet the legal definition thereof as set forth in 8 USC 1101(a)(15)(k)(i) once he or she enters the United States:…

> …..(i) is the fiancee or fiance of a citizen of the United States and who **seeks to enter** the United States solely to conclude a valid marriage with the petitioner within ninety days after admission;  (emphasis added)

Once a fiancé(e) enters the United States, he or she is no longer *seeking* to enter the United States. Further, once he or she marries the petitioner he or she can no longer be a fiancée or fiancé of that citizen - a spouse cannot also be a fiancé(e).  Therefore, a child cannot be required to maintain within the definition of "child" any longer than his or her parent must maintain the definition of "K-1 beneficiary" which, as demonstrated, ceases upon admission and absolutely ceases upon marriage.

Plaintiff's reasoning is consistent with the statute and the long practice of the State Department of issuing K-2 visas right up to the child's 21st birthday.  Significantly, Plaintiff's understanding is completely consistent with the interpretation of immigration law as laid down in plain language on form I-485 and the appurtenant instructions as discussed in Plaintiff's Motion for Summary Judgment below.

**Conclusion.**  Defendant's arguments do not withstand the faintest zephyr of scrutiny. They elicit interpretations that are unreasonable, inconsistent and produce harsh and absurd consequences. Plaintiff respectfully requests that Defendant's motion for summary judgment be denied.

Dated this 10th day of October, 2007.                    Respectfully submitted,

                                                                          /s/
                                        Dmytro Verovkin, Pro Se

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Comes now the Plaintiff and moves the Court for Summary Judgment on the basis of uncontested facts, the record as found is his USCIS file, the accompanying memorandum of points and authorities and upon any and all other factors the Court may choose to consider .

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I.  INTRODUCTION

In the narrow context, the case at hand calls up a question of whether the statutes of the United States are to be interpreted in such an way as to form a basis for denying adjustment of status to a lawfully admitted K-2 visa beneficiary on the grounds that he reached his 21st birthday at some point after his arrival in the United States but before his status was adjusted to that of a permanent resident.

 On the broader imperative, this case should be resolved in favor of common sense, fairness and good public policy as defined by Congress.  This Court is asked to decide if it is in the interests of the United States for an agent of the government to engage in the devastation of families of United States citizens without just cause..

The Plaintiff is not an attorney and therefore trusts in the good and decent people of the United States as represented by the judicial branch to sort through the complexities of immigration law and arrive at a fair and proper decision in this matter.

### II.  FACTS

The material facts of this case as contained in paragraphs 6 through 16 of the Complaint are undisputed.  In summary they are the following:

1) Plaintiff, Dmytro Verovkin was born October 16, 1984 in the Republic of Ukraine;
2) On March 31, 2004, Dmytro was issued a K-2 visa good until September 29, 2004 (180 days), concurrent with a K-1 Fiancé(e) visa issued to his mother and pursuant to an

approved Petition for Alien Fiancé(e) (from I-129F) submitted by Ronald Monks who is a United States Citizen, and an approved Nonimmigrant Visa Application (form DS-156). It should be noted that question 26 on the DS-156 asks, *How long do you intend to stay in the U.S.?* to which Dmytro answered, "Permanently."

3) On April 25, 2004, Dmytro and his mother were admitted as K-2 and K-1 entrants respectively;

4) On June 4, 2004, Dmytro's mother married Ronald Monks.

5) On September 14, 2005 Dmytro and his mother each filed an Application to Register Permanent Residence or Adjust Status (Form I-485).

6) On April 19, 2006, Dmytro's family attended an interview at the Defendant's offices in San Francisco for the purpose of adjudication of their I-485 applications.

7) On April 27, 2006 Dmytro received a letter from the Defendant denying his application for permanent residence and advising Dmytro that he should leave the United States.

8) On May 22, 2006, Dmytro filed a timely motion to re-open/reconsider.

9) On September 13, 2006 Dmytro's motion to re-open/reconsider was denied.

10) On December 24, Dmytro's mother received her Permanent Resident "Green" Card.

11) On June 30, 2007, Dmytro mailed a 30-day notice of intent to the Defendant which was not answered.

12) On August 2, 2007, Dmytro filed this action.

### III. ARGUMENT

A. <u>DEFENDANT USED A STRAW MAN ARGUMENT TO JUSTIFY DENIAL.</u>

In his letter of denial dated April 25, 2006, the Defendant gave, as the sole reason for his decision, the following:

> "A review of the record reveals that you were born October 16, 1984. Because you are now over 21 years of age, you now longer qualify as an accompanying child pursuant to **section 203(d)** of the Act. Consequently, the application must be denied for lack of a visa number." (Emphasis added)

Opposition to Defendant's Motion for Summary Judgment and Cross-Motion   C07-3987-CW

- 8 -

The Plaintiff, in his motion to reconsider, pointed out that his case is controlled by section 214 and that section 203 has no bearing on his case because he did not apply for, nor intend to apply for a family-based immigrant visa and that because of this obvious error the decision should be reconsidered. However, the Defendant remained unwilling to provide a valid basis for his denial leaving the Plaintiff no alternative but to bring this action.

B.  HISTORY THE FIANCE(E) NONIMMIGRANT VISA.

The Fiancé(e) visa process was created on April 7, 1970 with the enactment of Pub. L. 91-225.  The Act, for the first time, created a nonimmigrant classification which was directed to the ultimate grant of lawful permanent residence.  The "K" nonimmigrant visa has been described as a "hybrid between an immigrant and nonimmigrant visa, one which contemplates that the alien will eventually obtain permanent residence in this country."  Friedberger v. Schultz, 616 F. Supp. 1315, 1318, 3 Immigr. Re. A3-5 (E.D. Pa. 1985).

The new procedure permitted United States citizens to, in effect, pre-process their intended bride or groom and his/her children (if unmarried and under 21) so that the marriage would be the final step in the immigration process rather than the first.  The process is a benefit not only to the parties but to the government as well.  Backgrounds are checked ahead of time as applicants for the fiancé(e) visa must submit police records from every police department under whose jurisdiction they have lived since the age of sixteen.  Personal history forms are submitted and FBI background and name checks are also performed before the visa is issued.

Further, applicants for the "K" visa must submit to medical examinations performed specifically by physicians approved by the U.S. Department of State and immunization records are submitted.  Any pregnancy is disclosed and the other party is given the option of terminating the process or continuing. An intensive interview is conducted by a state department officer and most, if not all, skeletons are dragged out of the closet well ahead of the fateful decision as the DOS officer looks for signs of marriage fraud.

Through the K visa program, U.S. citizens learn more about their alien fiancé(e) than they would about a domestic fiancé(e). Recently, the program has been amended so that the alien fiancé(e) will know even more about his/her U.S. citizen's history and situation.

Such advance knowledge of potential obstacles to a successful marriage and the disposition of immigration issues before the wedding are of immense social value. Studies have shown that marriages of K-1 visa beneficiaries fare far better in terms of divorce rate than the national average.

One key to the success of the program is the fact that the fiancé(e) nonimmigrant visa process is essentially an immigration procedure with the last step being the K-1 beneficiary's marriage to the U.S. citizen petitioner within 90 days of entering the United States. Once the marriage is timely performed, the K-1 fiancé(e) and his/her K-2 children are deemed fully eligible for adjustment to permanent residence status and upon submitting the requisite application and fees and barring any findings of inadmissibility under Section 212 their status will be adjusted to permanent residence.

It is noteworthy how few issues have arisen from this straightforward and effective program. Only two Board of Immigration Appeals cases have been published that have relevance: Matter of Dixon, 16 I&N Dec. 335 (BIA 1977); 1997 WL 39292 and Matter of Dawson, 16 I&N Dec. 693 (BIA 1979); 1979 WL 44431. There have been no precedent interpretations of section 214(d) since 1979.

The 1986 International Marriage Fraud Amendments (IMFA) made two modifications to the K-1 procedure. The first added a requirement that the parties have met in the two years prior to petitioning for the visa; and the second made the adjustment to permanent resident status of the alien spouse and his/her sons and daughters conditional where the marriage occurred less than two years prior to adjustment. To accommodate this latter restriction, language was modified and section 216 was created dealing with adjustment of status. Plaintiff's adjustment should have been unaffected by these amendments because his mother's marriage had exceeded two years in duration at the time of adjustment.

C.   DEFENDANT'S DENIAL IS ARBITRARY AND INCONSISTENT.

For reasons not fully explained, the Defendant has adopted a view that a K-2 child must be under the age of twenty-one at the time he or she receives his or her Notice of Approval of the I-485 adjustment application.  This view is arbitrary and places greater restrictions upon the child than the law requires.  The law requires only that the child be unmarried and under the age of 21 to be eligible to enter the United States.  At times when a child of a fiancé(e) is approaching his/her 21st birthday, the consular officer is instructed to issue the K-2 visa for six months or until the child's 21st birthday, whichever period is shortest.  There are times then, when a K-2 visa is issued with only one or two days of validity.

If the Defendant's position on aging-out of K-2 children were correct, then the United States must be seen as engaging in a fraud upon the it's own citizens and their new families-to-be by not disclosing that the USCIS will absolutely not adjust the child's status owing to the physical impossibility of his/her remaining under the age of twenty-one until the adjustment process is completed - a process that in practice takes as long as 3 or 4 years in some cases but never less that 3 or 4 months.  Such "catch 22" interpretation of laws is inconsistent, capricious and arbitrary and therefore **impermissible**.

D.   DEFENDANT'S DENIAL VIOLATES PRECEPTS OF CONTRACTUAL INTEGRITY.

As shown above, severe problems can arise when one agency of the government acts in disharmony with another.  Likewise, when a government agency prepares official application forms and instructions to accompany those forms and requires applicants to complete and sign such forms, there is an reasonable expectation on the part of the applicant that the form and it's instructions accurately represent a restatement of the laws and regulations that control the subject matter and that no material information is being concealed or withheld.  It is also a precept of contract law that all material terms are contained within the four corners of the subject instrument.

The form I-485, Application to Register Permanent Residence or Adjust Status is 4 pages in length and is estimated to take 5 hours and 15 minutes to complete.  In addition there are 9 pages of instructions accompanying the application.

On the first page of the application, Part 2 labeled "Application type" the person is asked to check one of 8 boxes that follow the statement: "I am applying for an adjustment to permanent resident status because:" The Plaintiff checked the third box labeled, *"c. I entered as a K-1 fiancé(e) of a United States citizen whom I married within 90 days of entry, or I am the K-2 child of such a fiancé(e)*)."  Note that this box "c" is for the exclusive use of K-1 and K-2 entrants while boxes "a" and "b" are for immigrants whose visa number has been approved or those who claim derivative status from a spouse or parent who have been granted lawful permanent residence.

As to the Form I-485 Instructions, on page one under the heading *"Who May file This Form I-485?"* each of the eight check boxes on the application is further clarified.  Paragraph 3 addresses box "c" pertaining to K-1, K-2 eligibility to adjust::

*"A. You may apply to adjust status if you were admitted to the United States as the K-1 fiancé(e) of a United States citizen and you married that citizen within 90 days"*

*"B. If you **were admitted as** the K-2 child of such a fiancé(e), you may apply to adjust status based on your parent's adjustment application."*  {Emphasis added).

There is no verbiage stating or implying that the K-2 must still be a child under the age of 21 at the time of application or that he must remain under 21 throughout the months and years it may take to process the application.  To assert that such a material fact is true, yet not spelled out explicitly or implicitly on either the application or its instructions would conflict with the clear meaning of the three words, "*were admitted as*.."

Rightly, the instructions are designed to leave no doubt as to who is eligible to adjust and who is not. Further still, on page 2, section 10, we find a list of 12 situations where an alien is <u>not</u> eligible for adjustment.  This section is labeled, "*Who Is Not Eligible to Adjust Status*." Surely, if the Defendant's contention were accurate and a K-2 who has reached the age of twenty-one were in fact ineligible to adjust, this would be the place to so disclose.  Here there are

Opposition to Defendant's Motion for Summary Judgment and Cross-Motion   C07-3987-CW

two references to the K-2 visa. In the first reference under subparagraph F it is stated that you are not eligible to adjust if "*you failed to maintain your nonimmigrant status, other than through no fault of your own or for technical reason: unless you are applying because you are:…….2. A K-1 fiance(e) or a K-2 fiance(e) **dependent** who married the United States petitioner within 90 days of admission;"*  (Emphasis added)

It is important to note that the word "dependent" has been carefully substituted for the word "child" where the words "were admitted as" have be replaced with the word "are". The drafters of the forms were obviously mindful of the potential for misapprehensions of the type that caused the need for this suit. As further evidence, the same care has been taken in the next paragraph of the I-485 instructions which reads, you may not adjust status if, *"You were admitted as a K-1 fiancé(e) , but did not marry the U.S. citizen who filed the petition for you, or you **were admitted as** the K-2 child of a fiancé(e) and your parent did not marry the United States citizen who filed the petition:"* (Emphasis added)

If Defendant wishes to continue to assert then, that his interpretation of who is eligible to adjust and who is not, countermands the precisely-crafted wording by USCIS attorneys as contained in the official USCIS forms and instructions, then he should be required to address the negative consequences wrought by his interpretation and reconcile the obvious conflicts outlined above.

## IV. CONCLUSION

The United States Congress has never promulgated any law that would separate families without strong evidence of wrong-doing on the part of one of the family members. To the contrary, Congress has passed the LIFE Act to unite families whose members may be waiting abroad for immigrant visas to allow them to wait while with their families in the United States.

More recently congress passed the Child Status Protection Act (CSPA), designed to keep families together in the United States while waiting for immigrant visas for their children.

At every opportunity, congress has expressed its intent to ameliorate harsh results upon immigrating families.  The 9th Circuit has re-affirmed that intent and admonished the USCIS against interpretations that frustrate the manifest will of congress.  <u>Hernandez v. Ashcorft</u>, 345 F.3d 824, 840 (9th Cir. 2003) and in <u>Akhtar v. Burzynski</u>, 383 F.3d 1193 (9th Cir. 2004).

For all the forgoing reasons, Plaintiff respectfully asks the Court to put a stop to the suffering that the Defendant has unjustifiably inflicted upon the Plaintiff and his family and grant his motion for summary judgment.

Dated: October 10, 2007

                                           Respectfully submitted,

                                           _____/s/_____

                                         Dmytro E. Verovkin
                                         Pro Se