DMYTRO E. VEROVKIN, Pro Se
39821 Cedar Blvd., Unit 313
Newark, CA 94560
Telephone: 510-493-2441

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Dmytro VEROVKIN,<br><br>  Plaintiff,<br><br>  vs.<br><br>David N. STILL, District Director, United States Citizenship & Immigration Services,<br><br>  Defendant | Case No.: **C 07-3987-CW**<br><br>PLAINTIFF'S SURREPLY AND REPLY TO OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>Date:  November 15, 2007<br>Time:  2:00 p.m.<br>Courtroom:  2 |

## I. INTRODUCTION

Defendant Still, in opposing Plaintiff's Cross-Motion for Summary Judgment and in support of his own Motion for Summary Judgment purposely misstates Plaintiff's position, then argues against that misstated position. Plaintiff and Defendant agree that the Child Status Protection Act (CSPA) and the Legal Immigration Family Equity Act (LIFE Act) do not directly control in this case. These Acts have been cited solely for purposes of context and to demonstrate the longstanding and consistent desire of Congress that immigrant families not be separated for technical reasons or agency workload.  Therefore, Defendant's analysis and legal arguments concerning Plaintiff's lack of eligibility under CSPA and LIFE are unhelpful.

More on point are Defendant's peculiar claims that he "cannot adjust Plaintiff's status." and that, "an alien's status may only be adjusted if the alien is eligible for an immigrant visa" under Section 245 [8 U.S.C. § 1255]. Both claims are demonstrably untrue. Defendant has

made an error as a matter of law in denying Plaintiff's I-485 application for adjustment to permanent residence.

## II. ARGUMENT

Congress has set forth several pathways for adjustment to legal permanent residence which are separate from INA § 245. In example, asylees do not qualify for immigrant visas but can be nonetheless adjusted under § 209(b) of the Act [8 USC § 1159(b)].

The I-485 application form provides not only for adjustment under § 245 (Parts 2a & b of the form) pertaining to immigrant visa beneficiaries but also for nonimmigrant fiance(e)s (Part 2c), said asylees (Part 2d), Cuban refugees (Parts 2e & f), long-time residents (Part 2g) and other refugees (Part 2h). Each category of alien obtains permanent residence status under its own section of law - § 245 being just one of several.

Consequently, when defendant argues that "As with all applicants for adjustment of status….USCIS requires….that an immigrant visa be immediately available…" he is obviously misguided. Only in the case of family-based immigrants who seek to adjust under § 245 must an immigrant visa be immediately available.

Defendant offers that, "Prior to 1986, 8 U.S.C § 1184(d) (INA § 214(d)) contained a provision for the automatic adjustment of status for K-1 and K-2 visa holders after the marriage of the K-1 visa holder to the United States citizen." Defendant then suggests that the provision was removed in 1986 by the International Marriage Fraud Amendments (IMFA) and that the amendments "*required* K visa holders to adjust status under the terms of the *regular* adjustment provisions." [Emphasis added].

Though a subsequent regulation [8 CFR § 214.2(k)(6)(ii)] allows that a fiancé(e) and his or her minor children may apply for adjustment under § 245, there is nothing therein precluding adjustment under any other section of law. Indeed the words, "may apply" in the phrasing of the regulation belie such notion.

There is no disagreement that a K-2 entrant who has reached his 18th birthday before the marriage of his parent to the citizen is not eligible for an immigrant visa. Even after his K-1 parent's adjustment to permanent residence status, an immigrant visa would not be available to

him for years.  Therefore, no child over the age of 18 at the time of marriage could possibly be eligible for an immigrant visa and Defendant insists he cannot adjust the status of any applicant for which an immigrant visa is not immediately available.

In truth, Defendant routinely adjusts the status of K-2 entrants who are over the age of 18 at the time his or her parent married the citizen petitioner and does so concurrent with the parent's adjustment. As noted earlier, K-2 visas are issued for admission into the United States right up to the child's 21st birthday.  It is clear then, that § 245 cannot be the only section of law authorizing K-2 adjustment. It must therefore also be true that there is other statutory authority by which K-1 and K-2 entrants obtain permanent residence status.

That other statutory authority has always been and continues to be § 214(d). [8 USC § 1184(d)]  Indeed, USCIS Operating Instructions reveal unambiguously that permanent resident status can be applied for under multiple sections of law including § 214(d) – a statute promulgated exclusively for K-1 alien fiancé(e)s and their K-2 dependents.

> "General.  When an application for status as a permanent resident under section 214(d) or 245 of the Act, or Section 1 of the Act of November 2, 1966, or section 101 or 104 of the Act…." OI 245.5 [66 FR, Apr. 16, 2001]

Defendant fails to acknowledge that while Congress struck the sentence from § 214(d) that provided <u>unconditional</u> adjustment of K-1 and K-2 aliens to legal permanent residence, it did not render the section ineffective as the primary adjustment authority under which fiancé(e)s and their dependents acquire permanent residence status.

Defendant must accept that concurrent with enactment of the IMFA, Congress created INA § 216 [8 USC § 1186a] to deter fraudulent immigration through marriage and required that alien spouses and their children be afforded 24-month <u>conditional</u> permanent residence where the marriage is less than two years old.  Where a marriage has already reached its second anniversary (as in Plaintiff's case) the conditions are not imposed.

There are two elements to § 216 that are essential to the question before the Court:

First. Section 216 does not use the term "child" or "minor child" at all, but refers instead to K-2 entrants as "alien son or daughter" just as it uses the term "alien spouse" instead of "fiancé(e)." Such terms are descriptive of the aliens' status post marriage.

Second. In § 216(g), [8 USC § 1186a(g)] the following definitions are set forth:

(1)     The term "alien spouse" means an alien who obtains the status of an alien lawfully admitted for **permanent residence** (whether on a conditional basis or otherwise) –
    (A) as an immediate relative (described in section 201(b)) as the spouse of a citizen of the United States,
    (B) **under section 214(d)** as the fiancée or fiancé of a citizen of the United States,
    (C) under section 203(a)(2) as the spouse of an alien lawfully admitted for permanent residence , by virtue of a marriage which was entered into less than 24 months before the date the alien obtains such status by virtue of such marriage…
(2) "The term "alien son or daughter" means an alien who obtains the status of an alien lawfully admitted for **permanent residence** (whether on a conditional basis or otherwise) **by virtue of being the son or daughter** of an individual through a qualifying marriage." [Emphases added].

It should be therefore, clearly and convincingly evident from the above that both before and after the International Marriage Fraud Amendments, the section of law under which K-1/K-2 aliens primarily obtain their permanent residence status is INA § 214(d) [8 USC § 1184(d)] subject to the conditions of § 216 [8 USC § 1186a] and that ineligibility under § 245 is not grounds for denial..

## CONCLUSION

Defendant's misapprehension of the laws by which Plaintiff should be accorded permanent residence status has resulted in the improper denial of his I-485 application. Wherefore, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment and grant summary judgment in Plaintiff's favor.

Dated: October 31, 2007                                         Respectfully submitted,

                                                                            /s/

                                                           Dmytro Verovkin, Plaintiff