IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DMYTRO VEROVKIN,

    Plaintiff,

  v.

DAVID N. STILL,

    Defendant.
_____/

No. C 07-3987 CW

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

    Defendant David N. Still, director of the San Francisco office of the U.S. Citizenship and Immigration Services (USCIS), moves for summary judgment on Plaintiff Dmytro Verovkin's claim for judicial review of USCIS's determination that he is not eligible to adjust his status under the Immigration and Nationality Act (INA). Plaintiff cross-moves for summary judgment. The matter was taken under submission on the papers. Having considered all of the papers submitted by the parties, the Court denies Defendant's motion and grants Plaintiff's cross-motion.

BACKGROUND

    The material facts of this case are undisputed. Plaintiff was born on October 16, 1984 and is a Ukrainian national. He lived in Ukraine until 2004, when he withdrew from his studies at the Gorniy

1  Institute of Jurisprudence and accompanied his mother to the United
2  States.  His mother was admitted on a K-1 visa as the fiancee of a
3  U.S. citizen; Plaintiff was admitted on a K-2 visa as her child.
4  Plaintiff's mother subsequently married her fiance within ninety
5  days of her entry, as required by the terms of her visa.
6      On September 14, 2005, Plaintiff and his mother filed I-485
7  applications with USCIS seeking to have their status adjusted to
8  that of lawful permanent resident.  On October 16, 2005, Plaintiff
9  turned twenty-one.  Plaintiff's mother's application for adjustment
10 of status was later approved.  However, in a notification dated
11 April 25, 2006, USCIS denied Plaintiff's application because he was
12 "now over twenty-one years of age" and no longer qualified as an
13 accompanying child pursuant to 8 U.S.C. § 1153(d).  Ex. to Compl.
14 Plaintiff now challenges USCIS's determination that he is
15 statutorily ineligible for adjustment of status.

                              LEGAL STANDARD

I.  Summary Judgment

    Summary judgment is properly granted when no genuine and
disputed issues of material fact remain, and when, viewing the
evidence most favorably to the non-moving party, the movant is
clearly entitled to prevail as a matter of law.  Fed. R. Civ.
P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);
Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.
1987).

    The moving party bears the burden of showing that there is no
material factual dispute.  Therefore, the court must regard as true
the opposing party's evidence, if supported by affidavits or other

                                    2

1  evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815
2  F.2d at 1289.  The court must draw all reasonable inferences in
3  favor of the party against whom summary judgment is sought.
4  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
5  587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d
6  1551, 1558 (9th Cir. 1991).
7       Where the moving party does not bear the burden of proof on an
8  issue at trial, the moving party may discharge its burden of
9  production by either of two methods.  <u>Nissan Fire & Marine Ins.</u>
10 <u>Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir.
11 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Id.</u>

       If the moving party discharges its burden by showing an
absence of evidence to support an essential element of a claim or
defense, it is not required to produce evidence showing the absence
of a material fact on such issues, or to support its motion with
evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u>
<u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v.</u>
<u>NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the
moving party shows an absence of evidence to support the non-moving
party's case, the burden then shifts to the non-moving party to
produce "specific evidence, through affidavits or admissible
discovery material, to show that the dispute exists."  <u>Bhan</u>, 929

3

F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. Id.; see also Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case. UA Local 343, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." Id. This standard does not change merely because resolution of the relevant issue is "highly fact specific." Id.

II.  Review of Administrative Action

Under § 706 of the Administrative Procedure Act (APA), a court may set aside any agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). USCIS's decision that Plaintiff is statutorily ineligible for adjustment of status was based on its legal

4

interpretation of the INA. In <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984), the Supreme Court established a two-pronged framework for judicial review of an administrative agency's interpretation of the statutes and regulations that it administers:

> If congressional intent is clear, both the court and the agency must give effect to the unambiguously expressed intent of Congress. If, however, Congress has not directly addressed the exact issue in question, a reviewing court must defer to the agency's construction of the statute so long as it is reasonable.

<u>Garcia-Quintero v. Gonzales</u>, 455 F.3d 1006, 1011-1012 (9th Cir. 2006) (internal quotation marks and citations omitted).

However, in <u>United States v. Mead Corp.</u>, 533 U.S. 218, 226-27, (2001), the Supreme Court held that <u>Chevron</u> deference applies only "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." The Ninth Circuit has interpreted <u>Mead</u> as placing "crucial limits on <u>Chevron</u> deference owed to administrative practice in applying a statute, clarifying that agency interpretations promulgated in a non-precedential manner are beyond the <u>Chevron</u> pale." <u>Garcia-Quintero</u>, 455 F.3d at 1012 (internal quotation marks omitted); <u>see also</u> <u>Hall v. EPA</u>, 273 F.3d 1146, 1156 (9th Cir. 2001) ("Interpretations of the Act set forth in [] non-precedential documents are not entitled to <u>Chevron</u> deference."). "In light of <u>Mead</u>, the essential factor in determining whether an agency action warrants <u>Chevron</u> deference is its precedential value." <u>Garcia-Quintero</u>, 455 F.3d at 1012

5

(internal quotation marks omitted).

Here, Plaintiff challenges the individual administrative decision to deny his application for adjustment of status. The decision has no binding effect on third parties and, as discussed below, is not based on the clear dictates of statutes or formally enacted regulations. Because it is has no precedential value, it is not entitled to Chevron deference.

## DISCUSSION

I. Statutory Framework

The K-1 visa is a non-immigrant visa that allows an individual who is engaged to be married to a U.S. citizen to enter the United States for the purpose of concluding the marriage. See 8 U.S.C. § 1101(a)(15)(K)(i). The child of such a fiance(e) who accompanies or follows to join his or her parent may enter the United States with a K-2 visa. See 8 U.S.C. § 1101(a)(15)(K)(iii). A child is defined as an unmarried person under twenty-one years of age. 8 U.S.C. § 1101(b)(1). A K-1 visa holder must conclude his or her marriage with the U.S. citizen within ninety days of being admitted to the United States. 8 U.S.C. § 1184(d)(1).

Prior to the Immigration Marriage Fraud Amendments of 1986 (IMFA), the INA provided that, after the conclusion of the marriage, "the Attorney General shall record the lawful admission for permanent residence of the alien and minor children." See Pub. L. No. 91-225, 84 Stat. 116, § 3(b) (1970). Since the repeal of the automatic adjustment provision by the IMFA, K visa holders seeking permanent residence have been required to apply for adjustment of status under 8 U.S.C. § 1255(a). See Pub. L. No.

6

99-639, 100 Stat. 3537, § 3(d) (1986).  This section provides that the Secretary of the Department of Homeland Security may adjust an applicant's status to that of lawful permanent resident if the applicant "is eligible to receive an immigrant visa and is admissible to the United States for permanent residence," and if "an immigrant visa is immediately available to him at the time his application is filed."  8 U.S.C. § 1255(a).  However, a K visa holder's status may only be adjusted to that of conditional permanent resident.  8 U.S.C. § 1255(d).  This conditional status was created by the IMFA and is governed by 8 U.S.C. § 1186a.  It is designed to prevent an alien's improper use of marriage to a U.S. citizen as a means of obtaining permanent residence.  After a period of two years, the condition may be removed if USCIS is persuaded that the marriage is legitimate.  8 U.S.C. § 1186a(c)(3)(B).

Section 1255(a) does not create an independent basis for an applicant to obtain an immigrant visa; it merely establishes a procedure (adjustment of status) by which a visa may be distributed.  An alien who is already in the United States but seeks adjustment of status to permanent resident must demonstrate that he or she is entitled to an immigrant visa.[1]  After a K-1 visa holder is married to a U.S. citizen, he or she will have no difficulty making such a showing; the marriage renders him or her the "immediate relative" of a citizen, and therefore "eligible to

---

[1] Individuals not present in the United States may obtain an immigrant visa by applying for one with the U.S. Consulate.  Once they arrive, they need not adjust their status.

7

receive an immigrant visa." 8 U.S.C. § 1151(b)(2)(A)(i). "Immediate relatives" include children, spouses, and parents of U.S. citizens. Id. Likewise, an immigrant visa will be "immediately available to [a K-1 visa holder] at the time his application is filed" because immediate relatives of U.S. citizens, unlike other categories of family-based immigrants, are not subject to annual numeric limitations. 8 U.S.C. §§ 1151(b)(2)(A)(i), (c) and (a).

In contrast, some K-2 visa holders will find themselves without an independent statutory basis for adjusting their status under 8 U.S.C. § 1255(a). Because the IMFA eliminated automatic adjustment of status for K-2 visa holders, they must otherwise be "eligible to receive an immigrant visa" under the INA, and such a visa must be available immediately. K-2 visa holders under the age of eighteen will have no difficulty satisfying these requirements because their parent's marriage will render them the stepchild of a U.S. citizen, and thus an immediate relative entitled to an immediate visa. See 8 U.S.C. § 1101(b)(1)(B). However, children who are eighteen years or older at the time of the marriage are excluded from the definition of "stepchild," and therefore cannot obtain an immigrant visa as the immediate relative of a U.S. citizen. Id. This is true even though these children were given K-2 visas to enter the United States with their K-1 parent when they were already over eighteen. Nor can these children obtain derivative benefits from their K-1 parent's status as the spouse of a U.S. citizen, because there is no statutory basis for such

8

benefits.[2]  See 8 U.S.C. § 1151(b); 8 C.F.R. § 204.2(a)(4).

USCIS has acknowledged that the IMFA left this unintended gap in the INA with respect to the adjustment of status of K-2 visa holders.  Interoffice Memorandum from Michael L. Aytes, Assoc. Dir. of Domestic Ops. for USCIS, re. Adjustment of Status for K-2 Aliens (Mar. 15, 2007), available at www.uscis.gov/files/pressrelease/K2AdjustStatus 031507.pdf.  The agency filled the gap by enacting 8 C.F.R. § 214.2(k)(6)(ii), which reads:

> Upon contracting a valid marriage to the petitioner within 90 days of his or her admission as a nonimmigrant pursuant to a valid K-1 visa issued on or after November 10, 1986, the K-1 beneficiary and his or her minor children may apply for adjustment of status to lawful permanent resident under section 245 [8 U.S.C. § 1255] of the Act. Upon approval of the application the director shall record their lawful admission for permanent residence in accordance with that section and subject to the conditions prescribed in section 216 of the Act.

This regulation provides a basis for K-2 visa holders to obtain permanent resident status, even though the INA itself does not expressly provide that K-2 visa holders between the ages of eighteen and twenty-one are eligible for an immigrant visa.  As was the case before the IMFA, these benefits flow from the parent's status as the spouse of a U.S. citizen.

The USCIS regulation furthers Congress' intent in creating the K visa to facilitate the entry and subsequent permanent residence of alien fiance(e)s and of their children as well.  See Pub. L. No. 91-225.  Nothing in the legislative history of the IMFA suggests

---

[2]After the K-1 visa holder adjusts his or her status to lawful permanent resident, the K-2 child may apply for an immigrant visa as the child of a lawful permanent resident. However, such a visa would not be immediately available because this category of family-based immigrants is subject to annual numeric limits.

that Congress intended to eliminate the availability of permanent residence for K-2 visa holders between the ages of eighteen and twenty-one. See H.R. Rep. No. 99-906 (1986). Indeed, such an interpretation would render the K-2 visa meaningless for these children. Congress could not have intended to authorize the admission of these young people as children of a U.S. citizen's fiance(e), only to send them back to their countries of origin when they soon and inevitably reach the age of twenty-one, because there is no basis for them to obtain an immigrant visa in the meantime. In addition, the only INA provision addressing adjustment of status for K visa holders assumes that K-2 children will be able to adjust their status along with their parents:

> The Attorney General may not adjust, under subsection (a) of this section, the status of a nonimmigrant alien described in section 1101(a)(15)(K) of this title [establishing eligibility for a K-visa] except to that of an alien lawfully admitted to the United States on a conditional basis under section 1186a of this title as a result of the marriage of the nonimmigrant (<u>or, in the case of a minor child</u>, the parent) to the citizen who filed the petition to accord that alien's nonimmigrant status under section 1101(a)(15)(K) of this title.

8 U.S.C. § 1255(d) (emphasis added).

II. Application of the INA to Plaintiff

USCIS denied Plaintiff's application for adjustment of status because he was twenty-one years of age on the date his application was adjudicated. The dispositive legal question is which date should serve as a reference point for determining Plaintiff's age for purposes of his eligibility for adjustment of status.

To begin with, USCIS applied the wrong provision of the Act in reaching its decision to deny Plaintiff's application. It

10

concluded that, because Plaintiff was twenty-one years of age at the time his application was adjudicated, he "no longer qualif[ied] as an accompanying child pursuant to section 203(d) of the Act [8 U.S.C. § 1153(d)]." Ex. to Compl. Section 1153(d), however, provides, "[A child] shall, if not otherwise entitled to an immigrant status and the immediate issuance of a visa under subsection (a), (b), or (c) of this section, be entitled to the same status, and the same order of consideration provided in the respective subsection, if accompanying or following to join, the . . . parent." Thus, it grants derivative beneficiary status to the children of individuals who are eligible for an immigrant visa under § 1153(a), (b) or (c). Subsection (a) sets out the order of preferences for family-sponsored immigrants subject to numerical quotas; it does not apply to the immediate relatives of U.S. citizens, who are not subject to such quotas and may obtain a visa pursuant to § 1151(b)(2)(A)(i). Subsections (b) and (c) of § 1153 govern the allocation of preferences for employment-based and "diversity" immigrants, respectively. Plaintiff's mother did not apply for an immigrant visa under any of these subsections. Rather, she applied for adjustment of status as the wife of a U.S. citizen, having entered the United States on a K-1 visa as that citizen's fiance(e). Her eligibility for a visa, and thus Plaintiff's eligibility, was not governed by § 1153, and neither of them was subject to a numerical quota. Because USCIS applied the wrong statute in denying Plaintiff's application, its decision was arbitrary and capricious, and is subject to remand in any event.

Defendant justifies the USCIS decision on other grounds,

11

arguing that, the inapplicability of § 1153 notwithstanding, the INA nonetheless required that Plaintiff be under twenty-one at the time his application was adjudicated. However, because the INA no longer contains a provision explaining how a K-2 child is to obtain permanent resident status, its text does not directly address this issue. Accordingly, it is instructive to look at the age requirement as it existed before Congress inadvertently eliminated the procedure by which K-2 visa holders could obtain permanent resident status.

Prior to the enactment of the IMFA, as now, Plaintiff would have had to demonstrate that he was under twenty-one when he applied for a K-2 visa. However, after he entered the United States, his status would have been adjusted to that of lawful permanent resident automatically once his mother's marriage was concluded. There is no indication that, prior to the IMFA, the Immigration and Naturalization Service considered whether K-2 applicants were still under twenty-one at the time their status was to be adjusted. See 8 C.F.R. § 245.2(d) (1985) (governing adjustment of status for K visa holders). The IMFA eliminated the automatic adjustment, requiring K visa holders to apply for adjustment of status under 8 U.S.C. § 1255(a) and obtain conditional permanent residence before they could become full-fledged lawful permanent residents. By requiring these individuals to maintain conditional permanent resident status for two years, the IMFA made it easier for the government to deport those who enter into fraudulent marriages. But nothing in the IMFA suggests that, in furthering the purpose of deterring marriage fraud,

12

1 Congress also intended to impose additional age eligibility
2 requirements on K-2 applicants.  The IMFA does not purport to
3 require that K-2 visa holders demonstrate that they are still under
4 twenty-one when they seek to obtain conditional permanent
5 residence.  Indeed, such a requirement would have no relationship
6 to the IMFA's purpose.

7    Even today, the process of obtaining a K visa demonstrates
8 that presumptive eligibility for permanent residence is determined
9 prior to the applicant's entry into the United States.  Before a K
10 visa may be issued, the U.S. citizen must first file an I-129F
11 petition with USCIS on behalf of his or her fiance(e) and any
12 accompanying children.  8 U.S.C. § 1184(d).  This petition must be
13 supported by documents proving the petitioner's citizenship status
14 and demonstrating that the petitioner and his or her fiance(e) are
15 free to contract a valid marriage.  Instructions to Form I-129F,
16 available at http://www.uscis.gov/files/form/I-129Finstr.pdf.

17    Once USCIS approves the petition, it is transmitted to the
18 U.S. consular office in the alien fiance(e)'s home country.  The
19 fiance(e) and his or her children must then apply for a K visa with
20 the consular office.  In connection with this application, they
21 must submit numerous documents establishing their eligibility for
22 the visa and must undergo a medical examination.  See Foreign
23 Affairs Manual, Procedural Note 1 to 22 C.F.R. § 4181.  It is at
24 this point that the K-2 applicant must demonstrate that he or she
25 is a "child" within the meaning of the INA, i.e., that he or she is
26 under twenty-one.  22 C.F.R. § 4181(c); Foreign Affairs Manual,
27 Note 5.3 to 22 C.F.R. § 4181 ("The unmarried child of a K-1 or K-3

applicant does not require a petition.  The applicant needs only to demonstrate that he or she is the 'child' (as defined in INA 101(b)(1)) of an alien classified K-1 or K-3.").  The consular official determining the applicants' eligibility for a K visa must judge them as if they were applying for an immigrant visa in the "immediate relative" category.  22 C.F.R. § 4181(d); Foreign Affairs Manual, Procedural Note 3.4 to 22 C.F.R. § 4181.

Because K visa holders are required to demonstrate their presumptive eligibility for permanent residence prior to entering the United States, the subsequent application for adjustment of status serves merely to verify that the K-1 alien fulfilled the statutory requirement of marrying his or her U.S. citizen fiance(e) within ninety days, and that the applicants are not otherwise ineligible to adjust.  The I-485 application for adjustment of status lists, "I entered as a K-1 fiance(e) of a United States citizen whom I married within 90 days of entry, or I am the K-2 child of such a fiance(e)," as a separate basis for adjustment.  Form I-485, available at http://www.uscis.gov/files/form/i-485.pdf.  This is distinct from another basis listed: "an immigrant petition giving me an immediately available immigrant visa number has been approved."  Id.  As "evidence of eligibility," the application requires K visa holders to attach only a copy of the approval of their I-129F petition, their entry form and the K-1 visa holder's marriage certificate.  Instructions to Form I-485, available at http://www.uscis.gov/files/form/i-485instr.pdf.

In short, there is no statutory requirement that K-2 visa holders demonstrate that they are still under twenty-one when they

14

apply for permanent residence. By imposing such a requirement in Plaintiff's case, USCIS applied an unreasonable interpretation of the INA. Such a requirement is at odds with the fact that a child can receive a K-2 visa up until the day of his or her twenty-first birthday. Following Defendant's interpretation of the age requirement, a K-2 visa issued under these circumstances would be worthless the next day. Congress could not have intended such an absurd result. Accordingly, the Court holds that, once an alien has demonstrated that he or she is under twenty-one when he or she receives a K-2 visa,[3] he or she remains eligible for later adjustment of status, even if he or she has reached the age of twenty-one in the interim.

None of the sections of the INA that Defendant cites in support of his position persuades the Court to reach a different conclusion. As stated above, 8 U.S.C. § 1255(a) permits an alien to adjust his status if he "is eligible to receive an immigrant visa and is admissible to the United States for permanent residence," and if "an immigrant visa is immediately available to him at the time his application is filed." Plaintiff meets both of these requirements. As the child of a K-1 visa holder and pursuant to USCIS's gap-filling regulation, Plaintiff was entitled to an immediate visa at the time his application for adjustment of status was filed. See 8 C.F.R. § 214.2(k)(6)(ii). Defendant's bald assertion that § 1255(a) contains an "express requirement that an

---

[3] The Court need not and does not decide whether K-2 applicants may satisfy the age requirement by demonstrating only that they are under twenty-one at the time the I-129F petition is filed.

15

immigrant visa be available on the date [an applicant's] status is to be adjusted" is simply not supported by the text of the statute. And Defendant has provided no explanation for his assertion that Plaintiff's <u>eligibility</u> for an immigrant visa should be evaluated as of the date of the <u>adjudication</u> of his application, when the statute clearly requires evaluating the <u>availability</u> of such a visa as of the date of the <u>filing</u> of his application.[4]

Defendant also cites the Child Status Preservation Act (CSPA) in support of his position. This act applies to several categories of children seeking immigrant visas. It provides that whether such applicants are considered "children" is determined by reference to their age on the date of their petition for classification as such, rather than on the date the petition is adjudicated. <u>See</u> 8 U.S.C. §§ 1151(f) and 1153(h)(1). Defendant takes the position that the CSPA rule "does not apply to nonimmigrant petitions," i.e. petitions for non-immigrant visas. Ex. to Compl. Even accepting this argument as correct, the most that may be concluded from the asserted limitation of CSPA's scope to immigrant petitions is that Plaintiff's original I-129F petition for classification as the child of an alien fiance(e) was not entitled to protection against aging-out. This is not protection Plaintiff needs or seeks; he was under twenty-one years of age both when his I-129F petition was

---

[4] Even if the statute required that Plaintiff be eligible for an immigrant visa or that such a visa be immediately available to him as of the date of his application's adjudication, Plaintiff still met these requirements. As explained above, his eligibility for an immigrant visa and the availability of such a visa did not turn on his age at any time after he received his K-2 visa.

16

submitted and when it was adjudicated.[5]

As for Plaintiff's application for adjustment of status, the Court agrees that CSPA has no bearing on it, but for a different reason than that which Defendant advocates:  Plaintiff did not have to satisfy an age requirement when he applied for permanent residence.  He was not required to file a petition, whether of the immigrant or non-immigrant type, when he sought to have his status adjusted; he had already filed and obtained approval of an I-129F petition, which classified him as the minor child of an alien fiance(e).  At the time he was issued a K-2 visa, he had already been determined presumptively eligible for permanent residence, conditioned only on the conclusion of his mother's marriage and the completion of a two-year probationary period.  Plaintiff thus could not have "aged-out" after he applied for adjustment of status because his age was relevant neither at the time his I-129F petition was submitted nor at the time it was adjudicated.

But even accepting Defendant's argument to the contrary, Plaintiff's application for adjustment of status was more akin to a petition for an immigrant visa than one for a non-immigrant visa; if it was approved, he would have been granted conditional permanent resident status.  Thus, Defendant's argument that the CSPA rule applies only to immigrant petitions offers him no support.

Nor can Defendant derive support from the fact that the INA does not explicitly afford aging-out protection to K-2 visa holders

---

[5]The Court need not decide which of these is the operative date.

17

seeking adjustment of status.  It is true that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983) (internal quotation marks omitted).  However, this general principle has little application here.  The various provisions of the INA were not enacted contemporaneously to effect a single policy objective.  Rather, the INA has evolved gradually as Congress has reacted time and again to the need to cure one perceived defect or another in immigration policy.  Its piecemeal amendment and lack of cohesiveness call into question the significance of any minor variation in language between one section and another.  Moreover, this is not a case where Congress intentionally used different language in two sections of the same act.  The INA no longer even contains a provision explaining how K-2 visa holders are to obtain permanent resident status.  Thus, Defendant cannot present the Court with two sections of the Act to compare.  Accordingly, even if the age of a K-2 visa holder at the time of his or her application for adjustment of status were relevant, it is unlikely that Congress' failure specifically to apply CSPA's aging-out protections to K-2 children reflects a conscious choice to exclude them.  It is more likely that their situation was overlooked, as it was overlooked when Congress eliminated the provision for the automatic adjustment of their status and failed to replace it with a provision entitling them to an immigrant visa.

18

Although CSPA is not applicable to Plaintiff's situation, even if one accepts Defendant's contention that Plaintiff was required to remain under twenty-one to be eligible for adjustment of status, the policy behind CSPA is applicable. Determining Plaintiff's age by reference to the date on which he applied for adjustment of status rather than the date on which his application was adjudicated would result in fair treatment analogous to that provided by CSPA. In passing the Act, Congress recognized the fundamental unfairness of letting a child applicant's eligibility for permanent residence turn on how long it takes USCIS to process his or her application. See H.R. Rep. No. 107-45, at *2 (2001) (finding a need to address "the predicament of these aliens, who through no fault of their own, lose the opportunity to obtain an immediate relative visa before they reach age 21"). The same principles of fairness and equity apply with equal force in Plaintiff's case.

Defendant has cited no case law supporting the conclusion that Plaintiff is ineligible for adjustment of status. Indeed, the only factually similar case cited in Defendant's submissions actually weakens his position: In Jiang v. Still, 2007 WL 685700, at *5 (E.D. Cal.), the court concluded that the plaintiff was ineligible for an immigrant visa because she turned twenty-one a day after entering the United States, and therefore "was not a minor child at the time of [her] application" for adjustment of status (emphasis added). The Court disagrees with the reasoning in Jiang, and holds that Plaintiff's age at the time of his application for adjustment of status is not the relevant inquiry. However, the obvious

19

inference from <u>Jiang</u>'s holding is that if the plaintiff had been a child at the time she applied for adjustment of status, she would have been eligible.  Thus, even under the <u>Jiang</u> rule, Plaintiff prevails.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Docket No. 5) is DENIED.  Plaintiff's cross-motion for summary judgment (Docket No. 16) is GRANTED.  Defendant is ordered to re-open Plaintiff's application for adjustment of status and adjudicate it in conformity with this Order.  Judgment for Plaintiff shall enter accordingly.  Plaintiff shall recover costs from Defendant.

IT IS SO ORDERED.

Dated: 12/21/07

*Claudia Wilken*

CLAUDIA WILKEN
United States District Judge

20